IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 23-1003 |
| | ) | |
| POSTAL REGULATORY COMMISSION, | ) | |
| | ) | |
| *Respondent.* | ) | |

## PETITION FOR REVIEW

The United States Postal Service petitions this Court for review of the Postal Regulatory Commission's ("Commission") Order Number 6363, *Order Granting Petition, In Part, For Reconsideration* (Commission Docket Number RM2023-1, December 9, 2022) ("Order").[1] The Order granted the Greeting Card Association's

---

[1] On December 19, 2022, the National Postal Policy Council, the Alliance of Nonprofit Mailers, the American Catalog Mailers Association, the Association for Postal Commerce, the Major Mailers Association, the National Association of Presort Mailers, and N/MA- The News/Media Alliance (collectively, "the Mailers") filed a motion for reconsideration of the Order and, alternatively, a petition to initiate a proceeding to change the analytical principle for Fiscal Year 2022 retiree health benefit normal costs. The Postal Service recognizes that when a party files a timely motion for agency reconsideration, that motion renders the agency order "non-final" for that party and therefore is unreviewable, *see Wade v. FCC*, 986 F.2d 1433, 1433-34 (D.C. Cir. 1993) (per curiam), and accordingly renders the petition for judicial review "incurably premature," *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 133-34 (D.C. Cir. 1989) (per curiam). However, this Court has adopted a party-based approach to finality. *See Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002) ("A request for administrative reconsideration

petition for reconsideration, in part, and reversed the Commission's previous approval of the Postal Service's proposal concerning how it would treat, for regulatory purposes, the Postal Service Reform Act's one-time cancellation of $57.0 billion in payments for retiree health benefits that had been accrued but unpaid as of September 2021. A copy of the Order is attached to this petition as

---

renders an agency's otherwise final action non-final with respect to the requesting party."); *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994) ("It is widely accepted that finality with respect to agency action is a party-based concept.") (internal quotation marks and citation omitted); *ICG Concerned Workers Ass'n v. United States*, 888 F.2d 1455, 1457 (D.C. Cir. 1989) (the "reviewability of an agency action turns in part on the conduct of the petitioning parties"); *see also Milice v. Consumer Prod. Safety Comm'n,* 2 F.4th 994, 1000-01 (D.C. Cir. 2021) (same). Under this approach, "the pendency of a reconsideration request filed by one party does not render a decision nonfinal as to other parties who exclusively seek appellate review." *ICG Concerned Workers Ass'n*, 888 F.2d at 1458; *see also Petroleum Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1171 n.6 (D.C. Cir. 1994) (noting that "when two parties are adversely affected by an agency's action, one may petition for reconsideration before the agency at the same time that the other seeks judicial redetermination."). Accordingly, "in the multi-party situation, an agency decision may be final with respect to some parties but nonfinal with respect to other parties." *ICG Concerned Workers Ass'n*, 888 F.2d at 1458. Although this Court has not yet addressed the Commission's new regulation, 39 C.F.R. § 3010.165(c), which provides that a motion for reconsideration renders "the underlying Commission order . . . [not] final for purposes of 39 U.S.C. 3663 until final disposition of the motion[,]" given the Court's jurisprudence, the Postal Service is filing this petition for review as a protective measure so that it does not risk losing the ability to obtain judicial review of the Order. This protective measure is also necessary because the Mailers' pleading argues, in the alternative, for the Commission to initiate a new proceeding, and thus is not limited to a motion for reconsideration. By the time the Postal Service learns whether the Commission will address the Mailers' pleading as a reconsideration motion, the 30-day period under 39 U.S.C. § 3663 for judicial review will have lapsed.

2

Exhibit A and is located on the Commission's online docket at the following link: https://www.prc.gov/docs/123/123726/Order6363.pdf.

The Commission issued the Order on December 9, 2022, and posted the Order on the Commission's online docket the same day, which constitutes service of the Order under the Commission's rules. *See* 39 C.F.R. § 3010.127(a). This Court has jurisdiction to review an order of the Commission, and venue is proper in this Circuit. 39 U.S.C. § 3663. This petition for review is timely under 39 U.S.C. § 3663.

<div style="display:flex">

Respectfully submitted,

</div>

| | |
|---|---|
| THOMAS J. MARSHALL<br>General Counsel &<br>  Executive Vice President | CAROLINE R. BROWNLIE<br>Managing Counsel, Legal Strategy |
| | */s/ Morgan E. Rehrig* |
| STEPHAN J. BOARDMAN<br>Chief Counsel, Appellate &<br>Commercial Litigation | MORGAN E. REHRIG<br>United States Postal Service<br>475 L'Enfant Plaza, SW<br>Washington, DC 20260-1127<br>(202) 268-2962 |

*Attorneys for the United States Postal Service*

January 6, 2023

# CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, I caused a copy of the foregoing Petition for Review to be served by First Class U.S. Mail, postage prepaid, on the following:

David A. Trissell
Postal Regulatory Commission
901 New York Ave. NW,
 Suite 200
Washington, DC 20268-0001
*Counsel for Postal Regulatory Commission*

William B. Baker
POTOMAC LAW GROUP, PLLC
1300 Pennsylvania Ave. NW,
 Suite 700
Washington, DC 20004
*Counsel for National Postal Policy Council and N/MA – The News/Media Alliance*

Matthew D. Field
Ian D. Volner
VENABLE LLP
600 Massachusetts Ave. NW
Washington, DC 20001
*Counsel for Association for Postal Commerce*

David F. Stover
Greeting Card Association
2970 S. Columbus St.,
 No. B1
Arlington, VA 22206-1450

Eric S. Berman
VENABLE LLP
600 Massachusetts Ave. NW
Washington, DC 20001
*Counsel for Alliance of Nonprofit Mailers and N/MA – The News/Media Alliance*

Robert Galaher
Executive Director and CEO
National Association of Presort Mailers
PO Box 3552
Annapolis, MD 21403-3552

Arthur B. Sackler
Executive Director
National Postal Policy Council
1629 K Street, NW,
 Suite 300
Washington, DC 20006

Todd Haycock
President
Major Mailers Association
5220 Robert J Mathews Parkway
Eldorado Hills, CA 95762

Hamilton Davison
President & Executive Director
The American Catalog Mailers
Association, Inc.
PO Box 41211
Providence, RI 02940-1211

                                                                        */s/ Morgan E. Rehrig*
                                                                         Morgan E. Rehrig
                                                                         *Counsel for the U.S. Postal Service*
                                                                         January 6, 2023

# EXHIBIT A

Postal Regulatory Commission
Submitted 12/9/2022 3:04:32 PM
Filing ID: 123726
Accepted 12/9/2022

ORDER NO. 6363

UNITED STATES OF AMERICA
POSTAL REGULATORY COMMISSION
WASHINGTON, DC 20268-0001

Before Commissioners:            Michael Kubayanda, Chairman;
Ann C. Fisher, Vice Chairman;
Mark Acton;
Ashley E. Poling; and
Robert G. Taub

Costing Treatment of            Docket No. RM2023-1
Retirement Debt Relief

ORDER GRANTING PETITION, IN PART, FOR RECONSIDERATION

(Issued December 9, 2022)

I.     INTRODUCTION

This Order grants, in part, the petition for reconsideration filed by the Greeting Card Association (GCA) on November 4, 2022,[1] requesting the Commission to reconsider the Commission's position in its October 7, 2022, letter to the Postal Service approving the Postal Service's accounting treatment for removal of Postal Service retirement liabilities effected by the Postal Service Reform Act (PSRA).[2] The Petition also requests the Commission institute a proceeding pursuant to 39 C.F.R. part 3050 to

---

[1] Petition for Reconsideration and Initiation of Proceeding, November 4, 2022 (Petition).

[2] Letter from Erica A. Barker, Secretary and Chief Administrative Officer to Richard T. Cooper, Managing Counsel, Corporate and Postal Business Law, October 7, 2022 (Commission Letter), available at *https://www.prc.gov/docs/123/123096/Response%20Letter.pdf*.

accept, change, or reject the Postal Service's proposed costing treatment. Petition at 1. As a result of the Commission's further review of this matter as explained below, the Commission rescinds its October 7, 2022, letter and approval of the Postal Service approach. Should the Postal Service seek to change the established methodology, *i.e.,* to treat the PSRA-forgiven defaulted accruals differently than other items allocated to the Cost Segment and Components report for FY 2022, it needs to file a petition, consistent with the body of this Order, in support of its proposed analytical principle changes. In the absence of the Commission's acceptance of changed analytical principles, as described in the body of this Order, the existing accepted analytical principles are to be applied for the FY 2022 Annual Compliance Report (ACR). Likewise, this Order identifies the established methodology pertaining to the treatment of normal costs of retiree health benefits and invites any party to petition to change those principles.

## II. BACKGROUND

### A. Postal Service Letter

The following sequence of three letters and three filings were initiated by the Postal Service's letter to the Commission's Secretary dated August 12, 2022,[3] informing the Commission and other potentially interested stakeholders of its plans on how to reflect the PSRA's removal of the Postal Service's liabilities for regulatory purposes when submitting its FY 2022 ACR and its Form 10-K in November 2022.

The PSRA's removal of liabilities resulted in a one-time reversal of $59.6 billion for accrued but unpaid retiree health benefits as of March 2022.[4] For accounting purposes, and based upon accounting standards, the Postal Service proposed that its

---

[3] Letter to Erica A. Barker, Secretary and Chief Administrative Officer, August 12, 2022 (Postal Service Letter), available at
*https://www.prc.gov/docs/122/122469/Lttr%20re%20PSRA%20Effects%20ACR%20CRA.pdf*.

[4] Citing a note on submitted financial information and the Postal Service's Quarterly Report Form 10-Q submitted August 9, 2022. Postal Service Letter at 1.

Statement of Operations would reflect a one-time reduction in FY 2022 Operating Expenses with a substantial effect on bottom-line FY 2022 Net Income/Loss.  *Id.*  For regulatory purposes, the Postal Service's Cost and Revenue Analysis (CRA) starts with the costs in the General Ledger which are then classified in the CRA as either attributable or institutional costs.  The total of costs in the General Ledger in a year should match total costs in the CRA for that same year.  *Id.* at 2.

The Postal Service claims that the application of the accounting treatment reducing operating expenses in the Financial Statements would result in negative total institutional costs in the CRA.  This would be an anomalous result for regulatory purposes, rendering irrelevant the level of all other institutional costs for the year and making compliance with the appropriate share requirement impossible.  Further, such accounting treatment would impede calculation of the imputed federal income tax.  *Id.*  To avoid these outcomes, the Postal Service stated that it intends to omit the $57.0 billion negative expense from its Reallocated Trial Balance, and hence from the CRA and the ACR.  *Id.*  Given the one-time nature of the specific accounting transactions, costs in FY 2023 and later years will not be affected.  The Postal Service noted this is an extremely rare circumstance where appropriate accounting treatment does not constitute appropriate regulatory treatment.  *Id.* at 3.

Current year retiree health benefit normal cost ($2.150 billion) and amortization payments ($0.5 billion) would be treated consistently between the General Ledger and the CRA.  The Postal Service stated that these amounts are a reversal of accruals earlier in FY 2022 so that at the end of the year there will be no expense for those costs and amortization payments.  *Id.*

B.   Commission Letter Responding to Postal Service

The Commission responded to the Postal Service on October 7, 2022, endorsing most of the substance of the manner the Commission expected the Postal Service to account for the liability forgiven by the PSRA.  *See* Commission Letter.  The

Commission noted that a petition to initiate a proceeding is required to initiate changes to analytical principles but given the circumstance of a statutory change for a unique, non-recurring event for which there is no accepted analytical principle, it will approve as reasonable the proposed treatment, subject to clarification in an explanatory note in the CRA Report and other affected reports. Commission Letter at 2. The Commission Letter stated the proposed accounting treatment appears consistent with generally accepted accounting principles (GAAP). It therefore accepted the Postal Service's proposal to not include the $59.6 billion adjustment in the CRA subject to the addition of an explanatory note.[5] The Commission Letter also stated that including the elimination of past due prior year's retiree payments in the costs reported to the CRA would create nonsensical results and potentially interfere with the regulatory purposes of the CRA as well as distort trend analysis and comparisons to other CRA results. *Id.*

The Commission did not initiate a methodology change proceeding for the PSRA debt forgiveness because there is no accepted analytical principle that governs the treatment of this unique and one-time statutory event. The Commission noted, however, that in the absence of the circumstances as presented *i.e.,* unique and non-recurring statutory changes without an existing analytical principle, the Postal Service must follow the established process for considering changes in analytical principles. *Id.* at 4.

    C.    GCA Petition and Mailers' Letter

Thereafter, on November 4, 2022, GCA filed the Petition for reconsideration and initiation of proceeding pursuant to 39 C.F.R. § 3050.11 contending that the Postal Service's proposed treatment is "clearly a change in analytical principles" and must be assessed in a rulemaking docket pursuant to 5 U.S.C. § 553 to provide opportunity for

---

[5] *Id.* at 3. The Commission Letter explained that the note should be presented in a footnote to the Total cost row on the CRA and all other affected reports (Expanded CRA and the Cost Segments and Components Report) reconciling the Total Operating Expenses and interest Expenses rows of the Statements of Operations on the FY 2022 Form 10-K sufficient to explain the reconciling items. *Id.* at 3-4.

public comment that it believes is mandatory. Petition at 1. The Petition also incorporated by reference the arguments that had been submitted by letter previously by a group of mailers.[6]

The arguments presented by the Mailers are, first, that the treatment proposed by the Postal Service constitutes a change to accepted analytical principles, and that the Commission's rules do not allow changes in analytical principles by unilateral letter notice and was therefore *ultra vires.* Mailers' Letter at 2. Second, they contend that it is unclear whether the October 7 letter addressed the intention to not accrue retiree health benefit normal costs in FY 2022. *Id.* They argue that the Commission should require the Postal Service to file a request to change analytical principles pursuant to Rule 3050.11 prior to commencement of the ACR. They point out that the retiree health benefit costs have been considered institutional costs for the past 2 years and used to calculate the density factor. *Id.* at 3. The Mailers contend that the Commission's approval of the treatment of the PSRA debt cancellation is an unsupported departure from prior Commission findings and is inadequately explained. *Id.* at 4-5. They claim that the proposed treatment will have a negative impact on market dominant mailers (as a result of the use of the institutional cost ratio to calculate the density-based authority), but if the $57 billion is accounted for as they wish it to be, it negates the density-based authority. *Id.* at 5-6. Also, they contend the retiree health benefit normal costs are actual costs that have been and continue to accrue, regardless of whether the Postal Service makes payments to the Treasury to fund them and may understate costs avoided and erroneously indicate that some workshare discounts are out of compliance. *Id.* at 6-7.

---

[6] Letter to Erica A. Barker, Secretary and Chief Administrative Officer, October 13, 2022, styled Motion for Reconsideration of Response to the Postal Service's Proposed Changes to Accepted Analytical Principles (Mailers' Letter), available at *https://www.prc.gov/docs/123/123145/Motion%20for%20Reconsideration_PropChange_.pdf*. The motion did not conform to Commission procedures for filing motions. Representatives of 13 mailer organizations, including GCA, signed the letter (Mailers).

### D.    Postal Service Response

The Postal Service filed a response in opposition to GCA's Petition on November 10, 2022.[7]  It points out the Commission never concluded that the proposed treatment constitutes a change in accepted analytical principles.  Postal Service Response at 3.  It contends that there are no prescribed procedures for establishing new procedures under new circumstances for one-time resolutions.  *Id.* at 4.  The Postal Service argues that rather than establishing or amending its regulations, the Commission's Letter interprets its current regulations.  *Id.*  Specifically, the letter discusses the application of its rules in highly unusual circumstances with no pretense of effects in the future.  *Id.*  The Postal Service notes the Postal Service's Letter was published on the Commission's website giving all interested parties nearly 2 months opportunity to identify concerns.  *Id.* at 5.  It further notes the Mailers make no attempt to address the regulatory interferences identified by the Postal Service that it seeks to avoid, or that the alternative would lead to rational results.  *Id.* at 6-7.  The Postal Service also counters that there is no longer any prefunding liability requirement for retiree health benefits so that normal costs in excess of total accrued costs for FY 2022 are zero.  *Id.* at 8.  It concludes the alternatives presented by the Mailers would create "nonsensical" results.  *Id.* at 9.

On November 21, 2022, the Mailer Associations filed a reply to the Postal Service Response.[8]  The Mailer Associations does not present any arguments not included in the Mailers' Letter.  The Reply contends the Postal Service's proposed treatment constitutes a change in analytical principles and that the Commission must follow its own regulations to access changes in analytical methodologies.  *Id.* at 4.  Further, it contends the proposal will impact density rate authority resulting in additional

---

[7] Response of the United States Postal Service in Opposition to GCA Petition for Reconsideration and Initiation of Proceeding, November 10, 2022 (Postal Service Response).

[8] Reply of Mailer Associations to Response of the United States Postal Service in Opposition to GCA Petition for Reconsideration and Initiation of Proceeding, November 21, 2022 (Reply).  The Reply indicates it represents a significant portion of the signatories to the Mailers' Letter of October 13, 2022.

costs for market dominant mailers.  *Id.* at 6.  The Reply also objects that excluding retiree health benefit "normal costs" is contrary to current methodology.  *Id.* at 8.

III.    ANALYSIS

Two issues present based on the Mailers' Letter and subsequent filings and actions.  First, whether the Postal Service's proposed treatment of the PSRA forgiveness of liabilities for unpaid but accrued retiree health benefits costs constitutes a change in an accepted methodology.  Second, whether the non-accrual of the retiree health benefit amortization and normal costs for FY 2022 and beyond constitute a change in accepted methodology.

*Treatment of PSRA forgiveness of defaulted accruals.*  The Commission's expectation based on the exchange of letters was that the forgiven defaulted accruals for PSRA retiree health benefits were being treated as a one-time adjustment that was non-operational and not a cost or revenue, but a "gain" akin to debt forgiveness.  The Commission noted "[t]he extinguishment of a liability results in derecognition of the liability from the Balance Sheet.  *See* FASB ASC 405-20 and further guidance in IFRS 9.3.3.1."  Commission Letter at 2.  The Commission's acceptance of the Postal Service's plan to account for the forgiven defaulted accruals for PSRA retiree health benefits was based upon the expectation that the "gain" would not be treated as a revenue or cost.

However, the Postal Service's recent filings do not match the Commission's expectation based on the exchange of letters.  In the Postal Service's FY 2022 Form 10-K report, trial balance, and statement of revenue and expenses, the $57 billion PSRA adjustment is treated as a one-time, non-cash benefit to net income in its Statement of Operations (Form 10-K at 59).

On the trial balance, the adjustment is made as an offset (credit) to trial balance account number 51265.000 (RETIREE HEALTH BENEFIT – AMORTIZATION).

From National Trial Balance, September 2022, Row 2044:[9]

| Effective Account (8 Digits) | | Month Closed | | | |
|---|---|---|---|---|---|
| | | SEP-22 | | | |
| | | Month Beginning Balance | Month Activity | Prior Period Adjustment | YTD Balance |
| 51265.000 | RETIREE HEALTH BENEFIT AMORTIZATION | ($56,975,093,943.28) | $0.00 | $0.00 | ($56,975,093,943.28) |

On the Statement of Revenue and Expenses, September 2022, the Postal Service included trial balance account number 51265.000 in Cost Segment 18, Service-wide Personnel Benefits and HQ/Area Operations, Component 208 Retiree Health Benefits: a summation of costs from component 202 Retiree Health Benefits (Current Year)[10] and component 203 Retiree Health Benefits (Prior Year).[11]

From Statement of Revenue and Expenses, September 2022, Row 1943:[12]

| CS | Cost Code | | Account Number/Desc | | SEP-22 | | |
|---|---|---|---|---|---|---|---|
| | | | | | YTD Current Amount | Prior Fiscal YTD Amount | Difference |
| 18 | 18S | ANNUITANT & PRE-FUNDED HEALTH BENEFITS-COMPONENT 208 | 51265.000 | RETIREE HEALTH BENEFIT AMORTIZATION | ($56,975,093,943.28) | $906,978,617.00 | ($57,882,072,560.28) |

In the most recent ACR, the Postal Service filed Library Reference USPS-FY21-5 which includes a Cost Segments and Components Reconciliation to Financial Statements and Account Reallocations. The report adjusts amounts reflected in the general ledger for year-end audit adjustments.[13] Trial balance account 51265.000 is reallocated to Cost Segment 18, Component 203. According to the FY 2021 Summary

---

[9] National Trial Balance, September 2022; and Statement of Revenue and Expenses, September 2022, November 10, 2022 (September 2022 Statement).

[10] The normal cost of the retirement health benefits of active employees calculated by Office of Personal Management (OPM).

[11] Accrued expenses to amortize Postal Service Retiree Health Benefits Fund unfunded liability calculated by OPM.

[12] *See* September 2022 Statement.

[13] Docket No. ACR2021, Library Reference USPS-FY21-5, December 29, 2021, PDF file USPS-FY21-5 Preface, at 1.

Description, costs in Component 203 are unrelated to volume and are treated as institutional costs.  *See* Sum Desc, CS 18-21 at 20.

The recording of the PSRA adjustment in the CRA is different from the recording of a one-time gain/income for which there would not be accepted analytical principles to govern its treatment in the CRA.  "Miscellaneous items"[14] in the CRA are treated as independent from product or class levels and recorded as a separate line item when calculating total income.

According to 39 C.F.R. § 3050.1(a), an accepted analytical principle refers to an analytical principle that was applied by the Commission in its most recent Annual Compliance Determination (ACD) unless a different analytical principle subsequently was accepted by the Commission in a final rule.  In the Commission's FY 2021 ACD, FY 2021 CRA Report and Cost Component and Segment Report Component 203 accrued costs of $906,978,617 were treated as institutional costs.  Therefore, without a change in accepted analytical principle the Commission cannot endorse the treatment proposed by the Postal Service.  *See* Reply at 4.

Although the Commission understands that this is a one-time adjustment, because it has been treated as a credit to account number 51265.000, and thus allocated to the Cost Segment and Components report, the existing accepted analytical principles must be applied unless the Commission approves a change in the principles in accordance with § 3050.11.  If the $56.9 billion adjustment cannot be recorded in "Miscellaneous Items" in the CRA report and must remain as an offset to trial balance account 51265.000 (thus being reallocated to Cost Segment 18), currently accepted analytical principles dictate that this reallocation be treated in the same manner as Cost Segment 18, Component 203 was during the FY 2021 ACD.  This treatment would result in including the $56.9 billion as offsetting institutional costs.  *See* Sum Desc, CS 18-21 at 20.  Such treatment results in the unusual circumstance of institutional costs likely being negative for FY 2022 (as the gain of $56.9 billion is greater than the Postal

---

[14] Public Cost and Revenue Analysis, Fiscal Year 2021, at 3.

Service's expected total institutional cost for FY 2022). As noted by the Commission and Mailers, this unusual circumstance would, among other things,[15] nullify the density-based rate authority for a year (as the institutional cost ratio is used as a proxy for uncontrollable network costs).

*Treatment of amortization and normal costs.* With respect to the issue of amortization and normal costs, the PSRA amended how the Postal Service's retiree health benefits are funded. PSRA section 102 repealed former 5 U.S.C. § 8909a(d) requiring the Postal Service to make the amortization and normal cost payments and replaced it with a new requirement that the Postal Service pay into the Postal Service Retiree Health Benefit Fund (PSRHBF) for current retiree health care costs equal to premiums minus the cost of annual claims paid. The Postal Service will not incur retiree health benefit costs until either OPM's annual calculation results in a top-up payment (Sec 102(b)(1)), or the PSRHBF is exhausted, and it is required to make contributions to OPM for annuitant premiums.

Accepted analytical principles dictate the treatment of the costs incurred by the Postal Service, and do not require inclusion of costs that are not incurred. Applying the accepted principles to the costs incurred under the new requirements of PSRA does not require the Commission to accept a change in analytical principles. As a result, under the accepted methodology, there are no amortization and normal costs to account for in the Postal Service's financial reporting for FY 2022. Including such costs not incurred by the Postal Service would require a change in accepted methodology.

IV.   ADMINISTRATIVE ACTION

As a result of the Commission's further review of this matter as explained above, the Commission withdraws its approval of the proposed approach stated in its October 7, 2022, letter to the Postal Service. The Commission directs the Postal Service, should

---

[15] Negative institutional costs would directly impede the calculation of the appropriate share of the Postal Service's institutional costs (*see* 39 U.S.C. § 3633(a)(3)) and the calculation of the assumed Federal income tax on Competitive products (*see* 39 C.F.R. § 3060.40(c)).

it wish to proceed with its plans to account for the PSRA-forgiven defaulted accruals differently than other items in Cost Segment 18 for FY 2022, to file a petition seeking a change in accepted analytical principles pursuant to 39 C.F.R. § 3050.11. Such a filing must be made not later than December 21, 2022.[16] Should the Postal Service fail to file by December 21, 2022, the Commission would have insufficient time to consider a proposed change prior to the issuance of the ACD, and the existing methodology would apply.

Likewise, should the Mailers desire the Commission rely on a different analytical principle with regard to the amortization and normal cost payments (which the Postal Service does not incur in FY 2022 or beyond), Mailers may petition the Commission for a change pursuant to 39 C.F.R. part 3050. To be considered for FY 2022, such a petition must be made not later than December 21, 2022.[17]

Because any additional review, if necessary, will take place in new rulemakings initiated by the Postal Service or Mailers, this docket is closed.

V. ORDERING PARAGRAPHS

*It is ordered*:

1. The Greeting Card Association Petition for Reconsideration and Initiation of Proceeding filed November 4, 2022, is granted in part.

---

[16] The Commission intends to provide 2 weeks for interested parties to comment on the Postal Service's proposal. The Postal Service shall file as soon as practicable to allow for the prompt resolution of the matter prior to the Commission's issuance of the FY 2022 ACD.

[17] The Commission intends to provide 2 weeks for the Postal Service and other interested parties to comment on the Mailers potential proposal. Mailers shall file as soon as practicable to allow for the prompt resolution of the matter prior to the Commission's issuance of the FY 2022 ACD. Should a petition be filed later than December 21, 2022, the Commission shall consider it, but not for potential inclusion in the FY 2022 ACD.

2. Should the Postal Service seek to change the established methodology, *i.e.,* to treat the PSRA-forgiven defaulted accruals differently than other items allocated to the Cost Segment and Components report for FY 2022, it shall file, consistent with the body of this Order, in support of its proposed analytical principle changes by December 21, 2022.

3. Should the Mailers seek to change the established methodology, *i.e.,* to treat the amortization and normal cost payments for FY 2022 as accruing to the Postal Service, Mailers shall file, consistent with the body of this Order, in support of their proposed analytical principle changes by December 21, 2022.

4. In the absence of the Commission's acceptance of changed analytical principles, as described in the body of this Order, accepted analytical principles are to be applied for the FY 2022 Annual Compliance Report.

5. Docket No. RM2023-1 is hereby closed.

By the Commission.

Erica A. Barker
Secretary